IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division



| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:12cr70 |
| ) | |
| JUSTIN STEVEN SCROGGINS, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the Indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. In early February 2012, special agents of the Department of Homeland Security, assigned to the HR-BEST (Hampton Roads Border Enforcement Security Task Force) began investigating a drug trafficking organization suspected of importing, possessing and distributing Methylone, a Schedule I controlled substance, into the Hampton Roads area of Virginia from Nanjing, China. The investigation lead to the discovery of a loosely affiliated organization of individuals throughout the United States, to include the Eastern District of Virginia and the Middle District of Florida that were involved in the large scale importation of synthetic drugs from laboratories in China into the United States and the subsequent nationwide distribution of these drugs. Through the course of this investigation, agents identified Justin Steven SCROGGINS (SCROGGINS), a/k/a "Woot," a/k/a "Dirk McDiggler," as an individual involved

JSS
AEC
KLK

in these activities. SCROGGINS was initially identified by a Cooperating Defendant (CD #1) in this investigation. CD#1 maintained contact with SCROGGINS and recorded telephone conversations, internet chats and video teleconferencing sessions that took place since early March 2012.

2. HR-BEST agents reviewed the recorded evidence and noticed that on an almost daily basis since March 16, 2012, SCROGGINS was discussing his use, importation and distribution of various synthetic drugs covered under the Federal Analogue Act. SCROGGINS was also discussing methods by which he received payment for his drug trafficking activities, how he disguised his income, and how he could launder the proceeds from his drug trafficking activities. SCROGGINS had also discussed, on several occasions, planning to launder money, for a profit, for vendors on his website www.euphoricknowledge.com.

3. Each of these recorded conversations took place with SCROGGINS at a computer in his apartment on Broward Road in Jacksonville, Florida. Agents verified that SCROGGINS lived at this residence with his girlfriend and a roommate. CD#1 stated that he/she had always known SCROGGINS as "Justin Scott."[1]

4. On April 5, 2012, SCROGGINS, CD#1, and an individual using the username "reidtang" conducted a recorded three-way video-conference using a Skype video teleconferencing service. The purpose of this teleconference was for SCROGGINS to discuss importing several synthetic drugs from reidtang's laboratory in China into the United States via CD#1 in the Eastern District

---

[1] It is common for individuals in the drug trade to use aliases in an attempt to maintain a level of anonymity in their business dealings. In addition, SCROGGINS, after waiving his legal rights, confirmed that he used assumed names to prevent his drug customers from knowing his true identity.



of Virginia. SCROGGINS expressed his intent to send approximately $5,000 U.S. Currency via U.S. Postal Service Express Mail to CD#1 in the Eastern District of Virginia for CD#1 to conduct a transaction with reidtang on SCROGGINS' behalf. SCROGGINS ultimately stated that he wished for CD#1 to purchase on his behalf: 1 kilogram of 4-methyl-N-ethylcathinone, commonly known as "4-MEC"; 500 grams of α-Pyrrolidinopentiophenone, commonly known as "A-PVP"; 250 grams of β-keto-methylbenzodioxolylpentanamine, commonly known as "Pentylone" or "bk-MBDP"; 250 grams of α-methylamino-pripiopheonone, commonly known as "Pentedrone"; 25 grams of diphenyl-2-pyrrolidinyl-Methanol, commonly known as "d2pm"; 25 grams of 4-methyl-N-benzylcathinone, commonly known as "4-MBC" or "Benzedrone"; and 25 grams of α-Pyrolidinpbutiophenone, commonly known as "A-PBP". These substances are analogues of schedule controlled substances banned by federal law as they are each chemically similar in structure and have similar physiological effects as scheduled controlled substances and were marketed for human consumption by SCROGGINS.[2]

---

[2] According to the DEA's most recent findings, all the substances specified in the indictment as ordered by SCROGGINS are analogues of controlled substances. "4-MEC" is an analogue of methcathinone, a Schedule I controlled substance. "A-PVP" is an analogue of 3,4-Methylenedioxyprovalerone (MDPV), a Schedule I controlled substance. "Pentylone" is an analogue of Methylone, a Schedule I controlled substance. "Pentedrone" is an analogue of methcathinone, a Schedule I controlled substance. Their chemical structures and their physiological effects on the human body are substantially similar to that of their parent schedule controlled substance.

3

5.  On the video-recording SCROGGINS stated that he intentionally wished to conduct the transaction in this fashion saying, "I don't wanna get any of that shit here because I don't wanna have any issues goin' to fuckin' jail over it." SCROGGINS also added that "I'm pretty sure they [law enforcement] went through one of my packages, they didn't open the packages, but they opened the documentation for it, they were reading the slips." SCROGGINS also commented about other difficulties with increasingly stringent synthetic drug bans in Florida.

6.  During the same conversation CD#1 told SCROGGINS that SCROGGINS did not need to rush to send CD#1 the money to place the order with reidtang. SCROGGINS replied "of course, I do kinda wanna get you the money by tomorrow at the same time because I would like you to get it in the bank by tomorrow and have the bank wire sent out by Saturday. If you can get him (reidtang) the bank wire sent by Saturday, we know Monday or Tuesday morning, he'll have the money in China."

7.  In addition to the recorded video teleconferencing, SCROGGINS, CD#1, and reidtang were conducting a simultaneous text chat. During this text chat, SCROGGINS tells reidtang, in part, "so total of about $6000, I will send money to (CD#1) he can bankwire no issues ☺." Reidtang responded "k, good." Reidtang then informed SCROGGINS that he has MXE (Methoxetamine) available for sale. SCROGGINS responded "nice as long as it is good quality. rcsupplier sent me a batch of fucking white crap. I can maybe snort 100mg, small effect, haha and it makes my throat feel scratchy. Feels like I've been snorting a razor." SCROGGINS subsequently sent CD#1 an internet chat message with the tracking number for the currency being mailed to CD#1 in the Eastern District of Virginia.

8. HR-BEST agents conducted an open-source search of reidtang, and discovered that an individual who lists his Skype username as "reidtang" is the point of contact for Jiangyin Abigale Chemical Company in the Jiangsu Province of China. A cursory search of this website (www.jsabgl.com) revealed that this company sells only seventeen products, all of which are either scheduled controlled narcotics or their analogues under United States law.

9. On the morning of April 7, 2012, the assigned HR-BEST agents intercepted the package of U.S. Currency being shipped to CD#1 from SCROGGINS at the Broad Street Post Office in Portsmouth, Virginia. The package was a letter size U.S Postal Service Express Mail envelope that bore the sender name of MNS, LLC and SCROGGINS' home return address in Florida. The package was seized and opened with consent from CD#1. Inside the U.S. Postal Service Priority Mail envelope was a sealed white plastic envelope, which in turn contained a sealed manila envelope, which contained a sealed brown paper envelope, which finally contained $4,600 U.S. Currency. The tracking number on this package was the same tracking number provided the previous day by SCROGGINS.

10. On April 10, 2012, SCROGGINS was arrested in Jacksonville, Florida. He was given his legal rights and elected to waive them in writing. SCROGGINS admitted that he had set up his own website, www.euphoricknowledge.com, in August 2011 to compete with another drug website on which he had previously sold synthetic drugs. SCROGGINS not only marketed drugs on his website, but also sold advertising space on the site for $200 to $400 per month. In November, 2011, SCROGGINS began using the name Micro Nutrient Supply (MNS) to market synthetic cannabinoids from the AM and JWH series of compounds. He then expanded his market to include 5-MEO-MIPT, 5-MEO-DALT, A-PVP, MXE, 4-EMC, 4-MEC and etizolam.

SCROGGINS admitted to importing his drugs into the United States from three different laboratories in China. SCROGGINS stated that he would label his blends and other products "not for human consumption," but he admitted, "I know what it is ... people buy this stuff to get high."

11. SCROGGINS admitted to special agents that he had placed an order for A-PVP, Pentylone, Pentedrone, 4-MEC and other drugs from reidtang, one of the contacts at a Chinese lab, through CD #1 in Virginia on April 5, 2012. He stated that he wanted to place the order through CD#1 because the drugs bans were much less stringent in Virginia than in Florida. SCROGGINS and CD#1 had both ordered and received analogue drugs from reidtang prior to the April order.

12. In a consent search of the Defendant's residence, agents recovered three plastic bags containing 4-MEC and UR-144, which had been placed in the toilet for disposal but did not go down the drain.[3] Further, agents recovered mixing jars, rubber gloves, a grinder, U.S.P.S. packing/mailing boxes and envelopes, packaging materials, tobacco flavorings, a desktop computer, a USB drive and a Sprint cell phone. In addition, $1,636 in U.S. Currency was recovered.

13. The acts of the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the

---

[3] The plastic bag containing the drugs was submitted to the Department of Homeland Security U.S. Customs and Border Protection Laboratory and assigned Report # SV20120686 and ID #562286-6051D. The lab determined that there was 24.24 grams of 4-methyl-N-ethylcathinone (4-MEC) and UR-144 in a small bag; 120.36 grams of 4-methyl-N-ethylcathinone (4-MEC) in a large bag; and plant material which contained 45.64 grams of 4-methyl-N-ethylcathinone (4-MEC). Further, 4-MEC is an analogue of methcathinone, a Schedule I controlled substance. UR-144 is a synthetic cannabonoid and an analogue of JWH-018, a Schedule I controlled substance.



law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

                                NEIL H. MACBRIDE
                                UNITED STATES ATTORNEY

By: _____
     Amy E. Cross
     Special Assistant United States Attorney

**Defendant's Signature:** After consulting with my attorneys and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Justin Steven Scroggins
Defendant

**Defense Counsel's Signature:** I am Justin Steven Scroggins's attorney. I have carefully reviewed the above Statement of Facts with him. To the best of my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Keith L. Kimball
Counsel for the Defendant